STATE OF MINNESOTA *vs.* HENRY STEIN.

Argued by defendant, submitted on brief by state, Nov. 24, 1892.    Decided Feb. 23, 1892.

**Indictment for Perjury—Court Sufficiently Designated.**—In an indictment for perjury, it was alleged that the offense was committed in a certain town and county of this state, in the court of Wallace Sawyer, a justice of the peace, which court had authority to administer an oath. *Held*, that the court in question was sufficiently described and designated.

**"Willfully and Corruptly" Equivalent to "Willfully and Knowingly."** It was also alleged—form No. 24, § 2, ch. 108, 1878 G. S., being followed—that defendant's testimony (the same being particularly specified) was willfully and corruptly false. *Held*, that this was equivalent to alleging that he willfully and knowingly testified falsely.

Indictment of Henry Stein for perjury. His demurrer thereto was overruled, *Canty*, J., July 25, 1891, and, the questions of law arising thereon being important, the case was reported, with defendant's consent, to this court, pursuant to 1878 G. S. ch. 117, § 11. The indictment was as follows, viz.:

THE DISTRICT COURT FOR THE COUNTY OF WRIGHT AND STATE OF MINNESOTA.

*The State of Minnesota against Henry Stein, Defendant.*

Henry Stein is accused by the grand jury of the county of Wright and state of Minnesota, by this indictment, of the crime of perjury, committed as follows: The said Henry Stein on the seventh (7th) day of February, A. D. 1891, at the town of Monticello, in the said county of Wright and state of Minnesota, on his examination as a witness, duly sworn to testify the truth on the trial of a civil action in the court of Wallace Sawyer, a justice of the peace, between Clarence A. French, plaintiff, and Henry Stein, defendant, which court had authority to administer such oath, he, the said Henry Stein, testified falsely that he 'directed Mr. Merz only to charge a reasonable compensation for the work and labor of making loans and extensions. I gave him no other directions.' He further testified: 'I never told Mr. Merz that he must charge the same commissions

for extensions as he did for the original loans. I never told him it was worth as much for the extensions as it was for the original loan. Further, I never told Mr. Merz that he must make them pay commissions if a note was past due and paid,'—the matters so testified being material, and the testimony being willfully and corruptly false, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Minnesota.

Dated at Buffalo, in said county of Wright and state of Minnesota, this 3d day of June, A. D. 1891.

EDWIN BREWSTER, Foreman of Grand Jury.

Indorsed: A true bill.

EDWIN BREWSTER, Foreman Grand Jury.

W. H. CUTLING, County Attorney.

Names of witnesses: James C. Tarbox, Clarence A. French, William O. Merz.

Filed in open court June 3d, A. D. 1891.

O. J. STEWARD, Clerk of the District Court.

*Erwin & Wellington* and *S. Meyers,* for defendant.

We concede that under *State* v. *Thomas,* 19 Minn. 484, (Gil. 418,) an indictment for perjury that followed the statutory form was sufficient prior to the enactment of the Penal Code. But here there is no sufficient description of the court, or of its jurisdiction, before which this alleged perjury was committed. The definition of the crime of perjury has been changed by the Penal Code, § 87, in such manner that it requires another element to constitute the offense.

*First.* As to the description of the court. The words, "in the court of Wallace Sawyer," do not describe the tribunal with that certainty and directness contemplated by the statute. The indictment nowhere avers, either directly or indirectly, that Wallace Sawyer was a justice of the peace in and for the county of Wright and state of Minnesota. The whole thing is set forth by way of recital, with no averment of distinct and substantive fact. It does not exclude the inference that the said Wallace Sawyer was a justice of the peace of another county; that he was acting outside of

his jurisdiction; and that, therefore, the oath was extrajudicial, and one upon which no perjury could be assigned. *State* v. *Cunningham,* 66 Iowa, 94; *State* v. *McCone,* 59 Vt. 117; *Barnes* v. *Holton,* 14 Minn. 357, (Gil. 275.)

*Second.* The Penal Code defines the element of the crime in question as follows: "Willfully and knowingly testifies falsely, in any material matter." The indictment fails to allege that the testimony given was *knowingly* false, or that the defendant *knew* the same to be false, and in this respect the indictment is defective. *State* v. *Morse,* 1 G. Greene, 503; *Byrnes* v. *Byrnes,* 102 N. Y. 4; *Coyne* v. *People,* 124 Ill. 17.

*Moses E. Clapp,* Attorney General, and *W. H. Cutling,* County Attorney, for the State.

The indictment was demurred to upon the ground that it does not state facts sufficient to constitute a public offense. Appellant replies upon the case of *State* v. *Morse,* 1 G. Greene, 503, wherein it was held that the indictment must allege that the defendant "willfully and corruptly swore that a certain thing was true, knowing it to be false, or denied it, knowing it to be true." But the supreme court of Iowa has since held, in *State* v. *Raymond,* 20 Iowa, 583, that this averment is only necessary where the assignment of perjury is upon the statement by the accused of his belief, or denial of his belief, of the alleged false matter. This form was held good in *State* v. *Thomas,* 19 Minn. 484, (Gil. 418.) It is urged that the form prescribed by 1878 G. S. ch. 108, § 2, No. 24, is not sufficient, in view of the Penal Code, § 87, but it was held by this court in *State* v. *Johnson,* 37 Minn. 493, that the forms given in the General Statutes may still be used where the definition of the offense is the same.

The offense of perjury, as defined in 1878 G. S. ch. 97, § 1, has not been changed by the Penal Code, § 87, when read in connection with § 92.

COLLINS, J. The defendant stands indicted for the crime of perjury, and the sole question presented for our consideration is as to the sufficiency of the indictment as against a general demurrer, which was overruled in the court below. It is the contention of defendant's counsel that in two particulars the pleading is fatally

defective: *First*, that there is no adequate description of the court, or of its jurisdiction, in which the perjury is said to have been committed; and, *second*, that, in neglecting to aver that on the occasion mentioned the defendant willfully and *knowingly* testified falsely, there was omitted from the indictment an essential element of the crime of perjury, as that crime has been defined in section 87, Pen. Code.

The form prescribed for an indictment in such cases—No. 24, § 2, ch. 108, 1878 G. S.—was closely followed by the prosecuting officer when drawing the one now under consideration; and prior to the adoption of the Code this form had been declared sufficient by this court in *State* v. *Thomas*, 19 Minn. 484, (Gil. 418.) If the court in which the offense was alleged to have been committed has been properly described, and words equivalent in meaning and effect to those found in section eighty-seven, (87,) descriptive of and defining the crime of perjury, have been used in this indictment, the order of the trial court must be affirmed. The offense was alleged to have been committed at the town of Monticello, in the county of Wright and state of Minnesota, on the examination of defendant as a witness duly sworn to testify the truth on the trial of a civil action in the court of Wallace Sawyer, a justice of the peace, between a certain named plaintiff and defendant, which court had authority to administer such oath. It not only specified that the offense was perpetrated in the court of a justice of the peace in (that is, for) Wright county, but stated the town in which the court was held, the name of the justice holding it, and that the court had authority to administer the oath in question. The averment, as a whole, clearly repels the inference suggested by counsel,—that Sawyer may have been a justice from another county, acting outside of his jurisdiction, and hence the oath may have been extrajudicial, on which perjury could not be assigned. The court in question was adequately described and designated.

Passing to the second point made by counsel, it may be observed that the crime of perjury was not defined by statute prior to the adoption of the Penal Code. Section eighty-seven (87) thereof provides that "a person who swears or affirms that he will truly testify

\* \* \* in an action, \* \* \* and who in such action \* \* \* willfully and knowingly testifies \* \* \* falsely in any material matter, \* \* \* is guilty of perjury." This indictment is assailed by counsel upon the ground that it fails to aver that the testimony given by defendant was knowingly false, or that he knew the same to be false,—to be more specific, because the word "knowingly" was not used in place of "corruptly;" the allegation being that defendant testified falsely in certain specified matters or particulars, "the matters so testified being material, and the testimony being willfully and corruptly false." Where a crime has been described or defined by statute the judicious pleader will always observe and reproduce the statutory words in his allegation, and there is no real safety in any other course. But the precise words need not be strictly pursued. Words may be used which are the equivalents in meaning of those found in the statute. We have, therefore, to inquire whether the words "willfully" and "corruptly," used in this indictment, are the equivalents—conveying the same meaning—as the omitted word, "knowingly." Section eighty-seven (87) seems to have been taken *verbatim* from the Code of New York,—section ninety-six, (96.) We have been unable to find any adjudications in that state which throw any light upon the subject, or which suggest why the word "knowingly" was placed so closely in connection with the word "willfully." The latter is broader in its meaning, and includes more than the full signification of the former word. A person acts willfully when he acts intentionally, as distinguished from accidentally or involuntarily. In the ordinary sense in which the word is used in statutes, it means, not merely voluntarily, but designedly and perversely. The use of the word implies that the act was done knowingly, and of stubborn purpose. It has been well said that a charge of willful behavior amounts to an allegation that the accused knew what he was doing, and, as a free agent, intended to do what he was doing. See the dictionaries; also, *Com.* v. *Kneeland*, 20 Pick. 206, 220; *State* v. *Sleeper*, 37 Vt. 122; *State* v. *Massay*, 97 N. C. 465, (2 S. E. Rep. 445;) *In re Young*, 31 Ch. Div. 168, 174. The other word is not as broad in its meaning, but signifies the doing of an act for unlawful gain,—viciously, wickedly. It would be exceedingly difficult to show

that one may be corrupt without knowledge of it. It would be impossible to conclude that one could willfully testify falsely without doing so knowingly. The charge that defendant's testimony was willfully false necessarily included the assertion that he knowingly testified falsely.

Order affirmed.

(Opinion published 51 N. W. Rep. 474.)