## JOHN W. PRICE v. CHARLES A. DENISON and Others.[1]

### June 2, 1905.

### Nos. 14,339—(29).

**Malicious Injury.**

G. S. 1894, subd. 3, § 6781, to the effect that a person who "wilfully * * * severs from the freehold of another * * * any produce thereof," is guilty of a criminal offense, construed, and the word "wilfully," as therein used, *held* to embody an element of maliciousness.

**Severing Growing Crops.**

A person who in good faith, and without malice, and in the honest belief of a legal right so to do, severs growing crops from the land of another, the same being ripe and suitable for harvest, without destroying, injuring, or concealing the same, is not guilty of a criminal offense under the statute referred to.

**Malicious Prosecution.**

In an action for malicious prosecution, the evidence is examined, and *held* sufficient to sustain the jury in finding want of probable cause for the arrest and prosecution of plaintiff, from which they might assume malice, and that no reversible errors are shown, either in the instructions of the court to the jury, or in the admission or exclusion of evidence.

[1] Reported in 103 N. W. 728.

Action in the district court for Jackson county to recover $1,000 'for 'malicious prosecution. The case was tried before Lorin Cray, J.; and a jury, which rendered a verdict in favor of plaintiff for $250. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Knox, Faber & Knox,* for appellant.

*Smith & Bissett,* for respondent.

BROWN, J.

Action for malicious prosecution, in which plaintiff had a verdict, and defendant appealed from an order denying a new trial.

It appears from the record that this was the second trial of the action, the verdict rendered on the first trial having been set aside and a new trial granted. At the opening of the former trial, counsel for defendant moved the court that plaintiff be required to elect whether he would proceed with the case as an action for malicious prosecution or for false imprisonment. Counsel for plaintiff, who commenced the action and conducted that trial, elected to proceed as for false imprisonment, and the first trial was conducted as though the action had been so brought. At the opening of the second trial, counsel for defendant called the court's attention to the fact that upon the former trial plaintiff had elected to proceed with his action as for false imprisonment, and he demanded that the second trial be so conducted. The present counsel for plaintiff, who conducted the second trial, and who were not attorneys of record, believing the action to be one solely for malicious prosecution, declined to abide by the former election, and the court sustained them. This ruling is assigneed as error. We think the ruling, under the circumstances shown by the record, was correct. An examination of the complaint discloses that the action is one for malicious prosecution, pure and simple; no elements of false imprisonment being alleged. The election made by counsel for plaintiff on the first trial was no doubt inadvertent, and there is no suggestion that defendant was or could be in any way misled to his prejudice by being required to try the action on the theory of the complaint—malicious prosecution. Whether in any action, where the complaint is indefinite and uncertain as to the precise nature of the cause of action, the party would on a second trial be finally concluded by an election made at a

former trial, we need not determine. Such is not this case. The complaint is not ambiguous, but clearly and specifically sets forth a cause of action for malicious prosecution.

Upon the trial in the court below, two questions of fact were in issue and submitted to the jury: (1) Whether defendant had probable cause for making the complaint charging plaintiff with a violation of the law and causing his arrest; and (2) whether, in so causing his arrest, defendant was actuated by malicious motives. The jury found upon both questions in plaintiff's favor, and it is urged by defendant that the evidence is insufficient to sustain the verdict in either respect.

"Probable cause" has been defined by this and other courts to be a reasonable cause of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged; and this was, in substance, the definition given to the jury by the trial court. In determining whether the verdict of the jury, finding want of probable cause for the arrest of plaintiff, is sustained by the evidence, it is proper first to consider and construe the statute under which he was prosecuted. That statute (subd. 3, § 6781, G. S. 1894) reads as follows:

> A person who * * * wilfully severs from the freehold of another, or of the state, any produce thereof, or anything attached thereto, * * * is punishable by imprisonment in a county jail not exceeding six months or by a fine not exceeding $250.

Counsel for defendant contends that no element of maliciousness on the part of a person severing produce from the freehold of another is necessary to constitute a violation of the statute, and cites in support of that contention the case of Anderson v. How, 116 N. Y. 336, 22 N. E. 695. It was held in that case (the court having before it a statute similar to the one here under consideration) that the offense defined by the New York statute consists in the wilful severance from the freehold of another of anything attached thereto; that the term "wilful," as used therein, does not require any specific intent to violate the law, injure another, or to acquire any undue advantage; and

that malice is not an element of the offense there defined. If we were to follow that case, counsel's contention would be sound. For the learned trial court instructed the jury, on the facts shown in this case, that plaintiff had no lawful right to go upon the premises and sever the crop of flax in question; and it appears from the evidence that plaintiff's conduct in doing so was wilful and intentional. But we are not prepared to construe our statute as the New York court has construed the statute in that case. The statute, being penal, must be strictly construed. 26 Am. & Eng. Enc. (2d Ed.) 597. It was not the intention of the legislature by its enactment to make an ordinary trespass quare clausum fregit a criminal offense, but to provide for the punishment of trespasses which are accompanied by malice and an intention to injure the owner of the land trespassed upon. Under the construction given the statute by the New York court, any intentional trespass committed upon the land of another, though in good faith and in honest belief in a legal right to so act, would constitute a criminal offense. But we think the legislature of our state intended to punish criminally only those trespasses which are in fact malicious, as distinguished from acts which would constitute a trespass as a matter of law. "Wilful," as used in statutes of this nature, embodies an element of maliciousness. State v. Dahlstrom, 90 Minn. 72, 95 N. W. 580; State v. Foote, 71 Conn. 737, 43 Atl. 488. The rule of construction applicable to statutes awarding in certain cases treble damages for a wilful trespass upon real property should be applied. In those cases the courts "spell the defense of good faith into the statute." Hobe v. Swift, 58 Minn. 84, 59 N. W. 831; Parker v. Parker, 102 Iowa, 501, 71 N. W. 421; Werner v. Flies, 91 Iowa, 146, 59 N. W. 18; Savage v. Tullar, Brayton (Vt.) 223; Glenn v. Adams, 129 Ala. 189, 29 South. 836; David v. Correll, 74 Ill. App. 47; Russell v. Myers, 32 Mich. 522; Brown v. Mead, 68 Vt. 215, 34 Atl. 950. So construing it, we pass to the question whether the evidence sustains the finding that defendant did not have probable cause for the arrest of plaintiff.

In determining this question the jury had a right to consider all the evidence bearing upon the controversy between the parties, and all the circumstances tending to show whether defendant knew or ought to have known that plaintiff was proceeding in his acts in good

faith, and in the belief that he had the right to harvest the crops. Our examination of the evidence leads to the conclusion that the verdict of the jury must be sustained. The evidence shows or tends to show that C. N. Denison, father of defendant, owned the land on which the flax was raised, and that one Hoff had been cultivating the same under a contract with the owner. Hoff had been so operating it for a number of years, and about the time in question he became involved in some dispute with Denison, the owner of the land, which defendant, his agent, was endeavoring to adjust. He caused an action to be brought against Hoff to recover for money loaned him by his father, and directed the sheriff to attach the crop in question as the property of Hoff. This the sheriff did some time prior to the date on which defendant caused plaintiff's arrest. Defendant also a few days prior to that time procured from Hoff a bill of sale of the crop and other property, and caused the same to be filed in the office of the town clerk of the town in which the land was situated. To release the crop and property so attached, Hoff, with P. H. Sawyer and R. H. Wade as sureties, executed a bond of indemnity to Denison, the owner of the land, upon which the sheriff released his levy. To protect the sureties on this bond, Hoff executed to Wade a chattel mortgage upon the crop, which mortgage was in all things duly executed and filed.

Thereafter Wade determined to foreclose his mortgage, and employed plaintiff, with his team and harvester, to cut the flax. While engaged in so doing, defendant came upon the land and inquired by what right plaintiff was cutting the flax. Upon being informed that he was cutting it at the instance of Wade, defendant stated to him that Wade had no interest in the crop; that it belonged to defendant's father, the owner of the land; and he ordered plaintiff from the premises. Plaintiff refused to comply with the order, and continued in his work of cutting the flax, whereupon defendant caused his arrest, as charged in the complaint, for "wilfully and maliciously" severing the produce from the freehold of another, in violation of the statute referred to. The prosecution was subsequently dismissed for failure of the evidence to sustain the charge. When on the witness stand, plaintiff testified that he was cutting the crop at the instance of Wade and the sheriff, who had been consulted respecting a foreclosure of the mortgage; that he believed that Wade had a lawful right to the

flax under the chattel mortgage; and that he proceeded in good faith, without malicious intent to injure the owner of the land. There is no suggestion in the evidence that the crop was being injured or destroyed. It was ripe and in condition to be harvested. Other evidence was offered and received tending to disclose the circumstances surrounding the parties in respect to this issue of the case, but the foregoing covers the important features.

The trial court construed the contract between Denison and Hoff, in its instructions to the jury, as one of hiring, and as conferring upon Hoff no right to the crops raised by him thereunder. It further instructed the jury that the mortgage from Hoff to Wade was ineffectual to convey any title to the crops to Wade, and that plaintiff had no legal right to go upon the land and harvest the same, but nevertheless submitted to the jury to say whether he proceeded in his acts in good faith, and in the honest belief that Wade had an interest in the crop under his chattel mortgage, and a legal right to harvest and remove the same. We are of opinion that, under the evidence stated, the instructions were correct. Though good faith and honest belief are not ordinarily an excuse or justification for a criminal act, the law will, when those facts are made clearly to appear, relieve persons charged with trespass of the character here involved from the penalty imposed by statutes similar to that under which plaintiff was prosecuted. See cases above cited.

While the law, in the construction of the contract between Denison and Hoff, gave the latter no title to the crop, and though he had no right to mortgage the same, and nothing was conveyed to Wade thereby, still, in determining whether plaintiff had committed a criminal offense, or whether defendant had probable cause to believe that he had, it was proper for the jury to take into consideration the conduct of defendant with reference to the property and the title to it. If by his conduct he had treated the property as belonging to Hoff, had caused it to be attached as his property, and had procured from him a bill of sale transferring his title and interest therein to defendant's father, and thus given color of legality to the act of Hoff in mortgaging it, and if he knew of the good faith of plaintiff in cutting the flax, the jury was fully warranted in finding want of probable cause. The evidence tends to show that plaintiff knew of the mortgage and

the attachment, and generally of what had occurred between the parties about this time respecting the property. All these facts had a direct and important bearing upon the question whether defendant had, from his standpoint, the right to believe, as a cautious man, that plaintiff had committed a criminal offense in cutting the flax. The evidence in many respects was conflicting, and the question was one for the jury to determine. We conclude from the whole record that the jury was fully justified in finding a want of probable cause for the arrest of the plaintiff.

We are also of opinion that the verdict of the jury in finding that defendant was actuated by malicious motives is also sustained. Malice may be assumed in all cases of this kind, where want of probable cause is shown, and in such case a showing of actual malice is unnecessary. Eickhoff v. Fidelity & Casualty Co., 74 Minn. 139, 76 N. W. 1030. There being in this case sufficient evidence to warrant the jury in finding want of probable cause, the presumption of malice arose. In view of the amount of the verdict, $250, it is fair to infer that the jury acted on the presumption.

A large number of the assignments of error presented and discussed in defendant's brief, many of which refer to the rulings of the court on the introduction and exclusion of evidence, require no special mention. We have examined them all, and, though some incompetent evidence may have been received, it is clear that no prejudice resulted to defendant therefrom. The objection to the question made the basis of the sixth assignment of error should, in view of the theory of the law of the case as adopted by the trial court, have been overruled; but the error did not result in the prejudice of defendant, for the same subject was gone into later in the case, and the admission of the evidence here sought to be brought out by defendant is complained of as error by the fifty-sixth assignment. Of course, the trial court was in error in one or the other of its rulings, but defendant is in no position to complain. The last ruling was in accordance with our construction of the statute under which plaintiff was prosecuted, and proper. Nor was there any error in the ruling of the court admitting the docket of the justice of the peace, conceding that the remarks of the justice as contained therein were received in evidence. The justice there stated, in effect, that he found no evidence in the

case sufficient to justify the conviction of plaintiff of the offense charged against him. Such was the conclusion the law required him to reach, and, if it had not been inserted in the docket, the law would have inferred it. Plaintiff was not confined, respecting the evidence offered by him to show want of probable cause, to facts he could affirmatively show were within the actual knowledge of defendant, but had the right to prove such facts as might have come to his knowledge, had he made proper investigation and inquiry. Tabert v. Cooley, 46 Minn. 366, 49 N. W. 124; Boyd v. Mendenhall, 53 Minn. 274, 55 N. W. 45.

Another class of assignments of error calls in question the instructions of the court to the jury, and also the refusal of the court to give certain special requests. The charge of the learned trial court is somewhat long, but sufficiently clear and explicit upon all features of the case. The court instructed the jury that if they believed that plaintiff acted in good faith and without malicious intent to injure the owner of the land, in severing the crop in question, under a belief that Wade had an interest in the crop under the chattel mortgage, and that defendant knew, or by reasonable inquiry could have ascertained, his good faith in this respect, the jury would be justified in finding want of probable cause for his arrest. We think this embodied the vital question in issue, and, taking the charge as a whole, it is clear that the case was fully placed before the jury. The instructions were in harmony with the construction we have given to the statute under which plaintiff was prosecuted, and clearly justified by the evidence received on the trial. Complaint is made of the refusal of the court to give certain special requests. There were some twenty-four of these, and exception was noted to the refusal to give each. The substance of the special requests was covered by the general charge, and there was no error in the refusal to give them.

Order affirmed.