## STATE v. ROBERT WARD.[1]

December 18, 1914.

Nos. 18,854—(5).

**Malicious injury to property — indictment — evidence.**

Defendant was convicted under an indictment charging malicious injury to property and appealed. It is *held:*

(1) The indictment was not bad because it failed to charge that defendant acted "maliciously."

(2) It was not error to receive as evidence the opinions of qualified witnesses as to whether logs found in defendant's possession came from stumps on the land of the complaining witnesses.

(3) Jurors on a former trial may testify on a subsequent trial as to physical facts coming to their knowledge during a view made by them on the former trial. It is not material that the former verdict was set aside because of the misconduct of the jury in conducting unauthorized experiments during the view.

(4) It was not error to permit jurors on the former trial to give their

[1] Reported in 150 N. W. 209.

opinions or conclusions derived from and based upon the knowledge acquired on the view.

(5) There was no error in rulings in the admission or rejection of evidence, or in failing to give a requested instruction.

(6) The evidence sustains the verdict.

Defendant was indicted by the grand jury, tried in the district court for Wright county before Giddings, J., and a jury, and convicted of the crime of wilfully cutting down standing timber on the land of others. From the judgment of conviction, defendant appealed. Affirmed.

*W. H. Cutting* and *James E. Madigan,* for appellant.

*Lyndon A. Smith,* Attorney General, *John C. Nethaway,* Assistant Attorney General, and *Stephen A. Johnson,* County Attorney, for respondent.

BUNN, J.

Defendant was convicted under an indictment charging malicious injury to property, and appealed from the judgment.

The sufficiency of the indictment is challenged, as are certain rulings in the admission of evidence, and the sufficiency of the evidence to warrant the conviction.

1. The indictment was in the language of the statute, G. S. 1913, § 8934, subd. 1. It charged that defendant on or about March 10, 1912, at the town of Maple Lake in Wright county, wilfully and unlawfully cut down two maple trees then standing and growing upon the lands of others, the owners being named and the lands particularly described. The alleged defect in the indictment is that it did not allege that the cutting was done "maliciously." There is no doubt that to constitute an offense under the statute, there must be an element of malice. Price v. Denison, 95 Minn. 106, 103 N. W. 728. But it is not necessary to use the word malicious in the indictment. The words "wilfully and unlawfully" embody the idea of maliciousness, and they are the words used in the statute. We think the indictment was sufficient.

The rulings on evidence that are complained of may be grouped into two classes: (1) Receiving expert opinion evidence on the

question whether two logs found with defendant's name on them came from the stumps on the land of the complaining witnesses; (2) permitting jurors on a former trial to testify as to their observations and experiments on a view they were permitted to take during the trial, and their opinions derived from such observations and experiments.

The facts are as follows: The land involved was timber land owned by certain sisters, and known as the Butler woods. A brother "looked after" it. Two maple trees were found to be cut down and the logs hauled away. Two green maple logs were afterwards found in a nearby mill yard, both marked "R. Ward" on the end. The logs were measured, and then the stumps in the woods and the distances between them and the tree tops on the ground. It was testified that defendant, when asked where he got the logs, replied that he cut them on "our own place," referring to the farm of his father. It was shown that there were no recently cut maple stumps on the Ward land, and no stumps or trees as large as the logs in controversy. The tops of the stumps in the Butler woods and the ends of the two logs were cut off and used as exhibits in the case. It was in evidence that defendant had never asked for permission to cut any logs in the Butler woods. He did not take the stand on this trial, though he did on the former one. It appears that his defense and testimony then was that the logs were cut on his father's land.

2. We think it was a proper case for expert opinion evidence. The opinions of woodsmen who had examined the logs and stumps and measured the distance between the latter and the tree tops, and who had examined the stumps on the Ward land, would naturally be of assistance to the jury in determining whether the logs were from the trees in the Butler woods or from the Ward land. This is the consideration which should in the main govern the admission or exclusion of opinion evidence. We see no abuse of discretion in receiving this testimony.

3. On the former trial the jurors were permitted to go to the woods and view the stumps and tree tops. They conducted experiments, and their verdict of guilty was set aside because of this impropriety. On this trial many of them were called as witnesses

by the state, and were permitted over objections not only to testify as to what they observed on the view, and their experiments, but to state their opinions derived from such observations and experiments. It is quite clear upon principle and well established by decided cases that jurors upon a former trial may testify on a subsequent trial as to physical facts coming to their knowledge during a view made by them on the former trial. Hughes v. Chicago, St. P. M. & O. R. Co. 126 Wis. 525, 106 N. W. 526; Cramer v. Burlington, 42 Iowa, 315; Woolfolk v. State, 85 Ga. 69, 99, 11 S. E. 814; Hull v. Seaboard Air Line, 76 S. C. 278, 57 S. E. 28, 10 L.R.A.(N.S.) 1213; 40 Cyc. 2236. It is not material that the former verdict was set aside because of the misconduct of the jury in conducting unauthorized experiments. This was not receiving the evidence or affidavits of jurors to impeach their verdict. That verdict had already been set aside.

4. It is a question of more doubt whether the opinions of the jurors, derived from the knowledge acquired on the view, were properly received. The opinions might be influenced by the testimony on the former trial, and not wholly based on the view. But this bears rather on the weight of the evidence than on the question of its admissibility. Holding as we have that opinion evidence was properly received, and that the former jurors were competent witnesses, it would seem to follow that their opinions, based on the facts ascertained on the view were properly received. In Woolfolk v. State, 85 Ga. 69, 11 S. E. 814, cited above, defendant was convicted of the murder of his father, and a new trial was granted. On the first trial certain drawers with blood stains thereon were in evidence and taken to the jury room when the jury retired. On the second trial two of the former jurors were allowed to testify as to their conclusions that there was the bloody print of a hand on the drawers. It was contended that it was impossible for the witnesses to say what effect the other testimony on the trial had, in causing their minds to form the conclusions that they saw the print of a hand. It was held that the evidence was admissible, the objection going more against its weight rather than against its admissibility. In the case at bar the jurors declared that their opinions were based

127 M.—33.

upon the facts learned on the view. We cannot say that they were influenced by evidence received on the trial. While for the reasons suggested, we do not approve of the practice, we are unable to hold that it was error to permit the jurors, as well as the other witnesses, to state their conclusions based upon the knowledge acquired on the view. We have no right to say, as counsel for defendant does, that the former jurors were allowed to give generally their conclusions as to defendant's guilt, and the reasons why they convicted him. We must assume as true their sworn statements that they based their opinions wholly on the facts that came to their knowledge while viewing the stumps and logs, and conducting their experiments.

5. We see no error in sustaining objections to cross-examination of these jurors directed to showing their misconduct on the former trial. This appeared clearly enough, if it was material on the question of their credibility, and restricting the cross-examination in this regard was well within the court's discretion. We find no error in any other ruling on evidence, or in failing to give an instruction on the weight to be given circumstantial evidence.

6. Defendant claims that the verdict is not sustained by the evidence. We think that the evidence, though circumstantial, points pretty clearly to the conclusion that defendant cut the logs from the property of the complaining witnesses. The chief claim, and one not wholly without merit, is that the evidence fails to show that defendant cut down the trees "maliciously." The owners of the land did not testify, and there is no separate evidence that defendant was actuated by malice, or an intent to injure the owners. But the malice which is an essential ingredient of the offense need not be proved directly or as a separate fact. When the act is wrongfully and wilfully done, and the necessary result is to injure the property of another, malice may be inferred. Defendant had no permission to cut down trees in the Butler woods. He was not laboring under any belief that he had a right to do so, or under any mistaken impression that the land belonged to himself or his father. He insisted at all times that the logs came from the farm of his father, some distance away. On the whole we are unable to say

that the necessary malice was not shown, or that the verdict is not sustained by the evidence. Defendant has been tried twice. The trial that resulted in the judgment from which this appeal was taken was a fair one, and the trial court has approved the verdict. We think it should stand.

Judgment affirmed.