## THE STATE vs. WILLIAM R. FOOTE.

Third Judicial District, Bridgeport, April Term, 1899.   ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Each member of a committee appointed by vote of a town to repair one
of its school-houses, has the right to enter the building for the pur-
pose of performing that duty; and if one member in effecting an
entry for that purpose merely removes a lock which another mem-
ber had put on to exclude the former, such removal does not con-
stitute a willful injury to a public building under § 1423 of the
General Statutes.
The term " willfully," as used in the statute, means that the injury must
have been committed in a spirit of wantonness, or with an evil
intent or guilty purpose.

Argued April 18th—decided June 1st, 1899.

PROSECUTION for willful injury to a public building, brought
to the Town Court of Branford and thence by the defendant's
appeal to the Court of Common Pleas in New Haven County,
and tried to the jury before *Hubbard, J.;* verdict and judg-
ment of guilty, and appeal by the accused for alleged errors
in the rulings and charge of the court.   *Error and new trial
granted.*

The case is sufficiently stated in the opinion.

*Edward H. Rogers,* for the appellant (defendant).

*George M. Gunn,* Prosecuting Attorney, for the appellee
(the State).

HALL, J.   It appears from the record before us, that the
town of Branford, which by a consolidation of its school dis-
tricts had assumed control of the public schools and public
property within its limits, by a legal vote directed that the
school-house in question should be repaired, appropriated a
certain sum for that purpose, and appointed a committee
consisting of the three selectmen of the town and two other
persons, of whom the defendant was one, to cause such re-

pairs to be made. This committee appointed from its numbers a subcommittee, consisting of the defendant and one Beach who was also first selectman, who visited the school-house, agreed upon the repairs to be made, and agreed that the defendant should prepare plans and procure bids from contractors, and report to the committee of five. The bids received having been so reported, a motion to award the contract to one Kelsey, the lowest bidder, was lost, certain members of the committee of five having, for reasons stated by them, refused to vote to repair the school-house at that time. No further action seems to have been taken by the committee toward making said repairs. No member of the committee, excepting the defendant, seems to have made any further effort to have the repairs made as directed by the town. It does not appear that the committee has been discharged, or that it has reported to the town.

In this state of things the defendant, without any other authority than that which he had as a member of the committee appointed by the town, proceeded to perform the duty which the town had imposed upon the committee. He awarded the contract of making the repairs to the lowest bidder, directed him to proceed with the work, and, when Mr. Beach fastened the door of the school-house against him and the workmen ·he had employed, removed the padlock and replaced it with another, and ordered the workmen to proceed with the work.

It is evident that there was a difference of opinion among the members of the committee as to the expediency of making these repairs, until a prohibition, placed several years before by a member of the town board of health upon the use of this building for school purposes, had been withdrawn; and that the views of Mr. Beach and of some others of the committee were opposed to those of the accused upon this question.

To prevent the defendant from continuing the work which he had commenced, Mr. Beach removed the lock of which the defendant had the key, and replaced it with a lock which, unless removed, would prevent the defendant from

entering the school-house. To gain access to the building and proceed with the repairs, the defendant removed that lock and replaced it with another of which he had the key. In other words, one member of the committee removed a lock and replaced it with another in order to exclude one of his associates on the committee from access to the building; and the member thus excluded, not for the purpose of excluding others, but to gain access to the building and make the repairs which had been ordered by the town, removed the lock and replaced it by another. The exchange of the locks by the defendant is the act of willful injury complained of.

The facts as claimed by the State do not constitute the offense described in § 1423 of the General Statutes, under which the defendant is prosecuted, and the court failed to properly instruct the jury upon the law applicable to the facts proved.

In the first part of its charge to the jury the court said that practically the questions to be considered by them were, first, whether the accused had a right to enter the building in the way he did; and if the jury found that he had not, then whether in doing that act he had committed a willful injury to the building within the meaning of the law. In the latter part of the charge the court defines the word "willful," as used in the statute, as meaning deliberate or intentional. "It means," said the court, "intention to do the thing done." Concerning the right of the defendant to enter the building, the court used this language: "Mr. Foote, in the opinion of the court, had no authority to go into that building in the circumstances claimed to have been proved by the State, neither as an individual member of that committee of five, nor as a member of the subcommittee of two, unless you shall find that he really went there in good faith. . . . Unless you find that he went there in good faith in connection with his proper duties as one of the committee of two, he had no right to go there and force an entrance into that building."

In remarking upon the right of Mr. Beach as first selectman to remove the lock of which the defendant had the key, and to place one upon the school-house the key of which he

retained, the court said: "So that, in the opinion of the court, Mr. Beach had the right to go there and exchange those locks."

Again, after referring to the claim of the defendant that if he removed the lock "with the honest belief that he had a right to do so" he could not properly be found guilty, the court in effect said that "while that would make a great difference with the moral aspect of the transaction, the real question upon that point was whether the defendant forced an entrance to the building without authority of law."

From these statements, and from the entire charge, the jury may well have understood the court to say, that in its opinion, as a matter of law, the defendant might be found guilty of the offense charged if he had no lawful authority to enter the school-house and if he intentionally removed the lock, although he acted under the belief that he had the right to enter the building, and that it was his duty to make the repairs; that his only right to force an entrance into the building was as one of the subcommittee of two; that as a member of the committee of five appointed by the town he had no authority, with the concurrence of but one member of the committee and in opposition to the votes of the other three, to enter the building as he did; and that Mr. Beach, as town agent, had authority to exchange the locks and prevent the defendant from entering the school-house.

Whether under the circumstances shown by the evidence the defendant could bind the town by his contract with Kelsey to repair the school-house, is not a material inquiry. The defendant's right of access to the building did not depend upon his authority to make such contract.

Such right of access was a necessary incident to his power as a member of the committee of five. Having lawfully assumed the property of its school districts, the town had the power at its town meeting to direct these repairs to be made, and to appoint a committee to execute its order. General Statutes, Chapter 136. Until that committee had performed its duty by making the repairs, or the vote of the town had been rescinded, or the committee had been dis-

The State *v.* Foote.

charged, each of the five persons so appointed had the right of access to the school-house for the purpose of assisting, as a member of the committee, in carrying out the directions of the town. We discover nothing in the facts to indicate that in placing another lock upon the school-house Mr. Beach was endeavoring to protect the property of the town. But be that as it may, neither the first selectman, nor any member of the committee of five, nor a majority of such members, possessed the authority to exclude another member of the committee from access to the school-house which they were directed to repair.

The court should have instructed the jury that Mr. Beach had no right under the circumstances to do any act which would prevent the defendant from gaining access to the school-house; and that after Mr. Beach had so placed a new lock upon the door, the accused had the right to remove it in order to enable him as a member of the committee of five to enter the building.

But aside from the question of the legal right of the accused to remove the lock for the purpose of entering the school-house, the charge of the court does not give the correct meaning of the words "willful injury," as used in the statute under which the accused is prosecuted. This Act was not designed to punish criminally a person who, under an honest though erroneous belief of authority, in the exercise of a supposed right or in the performance of a supposed duty, necessarily slightly injures a public building. The purpose of the statute was to provide the punishment for an offense similar in its character to the common-law misdemeanor known as malicious mischief. "In its general application malicious mischief may be defined to be any malicious or mischievous physical injury either to the rights of another or to those of the public in general." 2 Wharton, Criminal Law, § 1067. It is unnecessary under our statute to allege or prove, as was required at common law, that the act was done with particular malice toward the owner or possessor of the property injured. The act must be alleged to have been done willfully, and the act constituting the willful injury must be

described in the complaint. *State* v. *Costello*, 62 Conn. 128. But though our statute contains the word "willfully" and not the word "maliciously," the former means maliciously in the sense of an injury done in the spirit of wantonness or with an evil intent or guilty purpose. Using the word malice in that sense, it is a necessary element of the offense described in the statute, and must be proved. *Com.* v. *Kneeland*, 20 Pick. 206; *Com.* v. *Williams*, 110 Mass. 401; *State* v. *Preston*, 34 Wis. 675, 684.

There is error and a new trial is granted.

In this opinion the other judges concurred.